**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MOMOMILK, LLC** | ) | |
| **and MOMOMILK IP, LLC** | ) | |
| Plaintiff, | ) | **Civil Action No. 1:19-cv-2721** |
| -v- | ) | |
| | ) | |
| **MILK BAR, LLC and** | ) | **JURY TRIAL DEMANDED** |
| **CASTLE HOSPITALITY GROUP,** | ) | |
| **LLC.** | ) | |
| Defendant. | ) | |
| | ) | |

**VERIFIED COMPLAINT**

MomoMilk, LLC and MomoMilk IP, LLC for their Complaint against Defendants, Milk

Bar, LLC, and Castle Hospitality Group, LLC state as follows:

1.      This is an action brought by Plaintiffs, the owner and licensee of several

distinctive and nationally recognized trade and service marks, including "MILK BAR" and "*milk*"

for trademark infringement, unfair competition and violations of Illinois statutory and common

law arising out of Defendants' use of the confusingly similar mark "jojo's *milk*BAR"[1] in

connection with their recently-opened bar and confectionery in Chicago.

**THE PARTIES**

2.      MomoMilk LLC is a Delaware limited liability company with its principal place

of business in New York, New York.  It is the parent of MomoMilk IP, LLC and a licensee of the

rights to use the MomoMilk IP LLC trademarks including "MILK BAR" and "*milk*".

_____

1 This stylized rendition of the "jojo's *milk*BAR" is used throughout this Verified Complaint because, based on
the pictures of Defendants' establishment, this form most closely approximates (using WORD) the manner
in which this mark appears to be most frequently used by Defendants.  The infringement claims, however,

3.     MomoMilk IP, LLC, is a Delaware limited liability company with its principal place of business in New York, New York.  As noted below, MomoMilk IP, LLC owns the rights to a number of federally registered trademarks including ones for MILK BAR and *milk* (Collectively, MomoMilk IP LLC and MomoMilk LLC shall be referred to as "MomoMilk.")

4.     On information and belief, Milk Bar, LLC is an Illinois limited liability company with its principal place of business in Chicago, Illinois.  On information and belief, Robert Schloss is a member of Milk Bar, LLC.

5.     On information and belief, Castle Hospitality Group, LLC is an Illinois limited liability company with its principal place of business in Chicago, Illinois.  On information and belief, Robert Schloss is a member of Castle Hospitality Group, LLC.   The Castle Hospitality Group LLC has been associated with other restaurant locations in Chicago, most notably, the Shore Club at North Avenue Beach.  (To avoid confusion in this Complaint, Defendants Milk Bar, LLC and Castle Hospitality Group, LLC shall be referred to as "Jojo's.")

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338 because MomoMilk's claims arise under the trademark laws of the United States, 15 US.C. § 1051 *et seq.*  The Court also has supplemental jurisdiction pursuant to 28 U.S.C. §§ 1338(b) and 1367 over MomoMilk's claims arising under Illinois law.

7.     Venue is proper in this Court pursuant to in 28 U.S.C. §1391 (b) and (c) because both Defendants reside in this district and a substantial part of the events giving rise to the claim occurred here.

---

are against this stylized version as well as any other rendition of the words "MILK" or "MILK BAR" in any trademark context.

2

8.     This Court has personal jurisdiction over Defendants because they each reside in this district and they each have had regular and consistent contacts with the State of Illinois sufficient to confirm personal jurisdiction.

### FACTS

9.     Called "one of the most exciting bakeries in the country" by *Bon Appetit* magazine, MomoMilk's MILK BAR is an acclaimed bakery and dessert brand, with brick and mortar stores in New York and four other major U.S. cities.  In addition, MomoMilk's MILK BAR and *milk* products are currently available through the MILK BAR website https://milkbarstore.com/ as well as at select third-party stores and on JetBlue airline flights.  In the past, MILK BAR products were sold in Target stores.

10.     Popular MILK BAR products include the Birthday Cake (the design for which is a federally registered trademark, see below), Strawberry Lemon Cake, Popcorn Cake, "CRACK PIE®" (recently renamed "Milk Bar Pie") Compost Cookie®, Cornflake-Marshmallow-Chocolate-Chip Cookie and various Cereal Milk® Soft Serves, among many others.





Birthday Cake                    Strawberry Lemon Cake                    Popcorn Cake



Milk Bar Pie



Compost Cookie®



Cornflake-Marshmallow
Chocolate-Chip Cookie



Compost Cookie Cake



Cereal Milk® Soft Serve



Cereal Milk® Soft Serve

11.     MILK BAR was founded by its chef and owner, Christina Tosi.  Ms. Tosi, a two-time James Beard award winner, is a judge on the hit television cooking competitions MasterChef and MasterChef Junior and also was the subject of an episode of Chef's Table, an Emmy-nominated docu-series on Netflix.  She has appeared multiple times on television shows such as Late Night with Jimmy Fallon, Good Morning America, CBS Good Morning, the Today Show and Live with Regis and Kelly.  Ms. Tosi has appeared on the covers of Adweek and Cherry Bombe and has been interviewed in multiple national publications including The New York Times, Forbes, Food and Wine and Fortune.

12.     The MILK BAR branded bakery shops and MILK BAR and *milk* products are

4

repeatedly mentioned during interviews and television appearances featuring Ms. Tosi. A list of citations to representative articles and videos mentioning the trademarks MILK BAR or *milk* are attached as Ex. A.

13.     Ms. Tosi also has authored three books, including *Milk Bar: All About Cake, Milk Bar Life* and *Momofuku Milk Bar.*

**A.     Ms. Tosi founds MILK BAR bakery.**

14.     In 2005, Ms. Tosi joined famed New York restaurateur David Chang's Momofuku family of restaurants as its first pastry chef.   Almost immediately, Ms. Tosi's desserts became a hit with diners.

15.     Accordingly, in 2008, with seed money loaned from Mr. Chang, Ms. Tosi opened a standalone Momofuku MILK BAR in New York's East Village, selling desserts including Cereal Milk® Soft Serve, Compost Cookies® and Crack Pie® which gained wide recognition.

16.     MILK BAR's success was overwhelming.   Within months, the new MILK BAR bakery began garnering independent recognition from the press.  In December 2008, *New York Magazine* featured MILK BAR in its "Where to Eat 2009" section.  Ex. B.  Mentions in 2009 in *New York* Magazine and two stories in *The New York Times* followed. Ex. C.

17.     That same year, MILK BAR's recognition soared when CNN anchor Anderson Cooper raved about the bakery and its food on an episode of the nationally-televised *Live with Regis and Kelly.*  That was followed by articles and mentions in publications across the country including *The Los Angeles Times* (2011), *Honolulu* Magazine (2012), *Forbes* (2013), *Inc.* (2014) and *The Washington Post* (2015).  During that same time period, *The New York Times* and *New York* Magazine featured MILK BAR in stories at least a half-dozen times.  Ex. D.

18.     MILK BAR's phenomenal success wasn't simply reflected in the press.  As its

sales and popularity soared, it began adding locations throughout New York and, then, the rest of the country.

19.     By 2009, a second MILK BAR location was opened in Manhattan; the following year an outpost opened in Brooklyn.  Two more stores opened in Manhattan and Brooklyn in 2011.  By 2013, when Plaintiff opened its first international store in Toronto, the company had five locations.  In 2015, the company opened a store in Washington, D.C., which was followed by stores in Las Vegas (2016) and Los Angeles (2018).  The company added three additional stores in New York in 2016 and 2017, two additional Washington, D.C. stores in 2018 and recently opened a store in Boston.

20.     On top of all that, MomoMilk developed a thriving ecommerce business.  In 2011, MomoMilk launched its independent website, ([www.milkbarstore.com](www.milkbarstore.com)) which, to date, has brought in eight-figure revenues in sales of MILK BAR products sold throughout the United States.

21.     In addition, MILK BAR products have been distributed through other channels, including through Target and Nordstrom department stores, and are currently on JetBlue airlines.

22.      MomoMilk also has entered into high profile brand partnerships with leading consumer product companies such as apparel-maker Madewell, fitness company SoulCycle and beauty company Glossier.

**B.     MILK BAR stands alone.**

23.     The original name, MOMOFUKU MILK BAR reflected Ms. Tosi's start as a pastry chef at the Momofuku family of eateries, almost all of which were "bars."  The word "Milk" was chosen as a playful reference to one of Ms. Tosi's favorites from childhood: the ice cream and treat heavy menu of the "Dairy Queen" restaurant chain.

24. The company referred to itself as MILK BAR from the early days in 2008 when the first bakery was opened. Given the overwhelming success and independent popularity of MILK BAR, over time, the company (and more importantly, the public) gradually shed all references to "Momofuku" in connection with the brand and by 2015, if not before, the brand became simply known as "MILK BAR" for all intents and purposes.

25. MomoMilk IP LLC owns federally registered trademark No. 5,161,248 for the mark "MILK BAR" for "On-line retail store services featuring bakery and confectionary products; Retail bakery shops." This federal registration issued on March 14, 2017. A copy of the certificate of registration is attached as Ex. E.

26. Among others, MomoMilk IP LLC also owns the following federally registered trademarks:

| Mark | Goods and Services | Registration No. and Date |
|------|---------------------|---------------------------|
| *milk* | IC 030. US 046. G & S: Cake mixes; Cakes: Cookie mixes: Cookies; Frozen Confections; Frozen custards; Mixes for bakery goods; Pies<br><br>IC 035. US 100,101,102. G & S: Retail bakery shops | 4,477,385<br><br>February 4, 2014 |
| *milk* | IC 030. US 046. G &S: Bakery goods; Cake mixes; Cakes; Cookie mixes; Cookies; Frozen confections; Frozen custards; Mixes for bakery goods; Pies.<br><br>IC 035, US 100, 101, 102. G & S: Retail bakery shops. | 4,477,386<br><br>February 4, 2014 |
| *milk* | IC 030. US 046. G & S: Bakery goods and dessert items, namely, cakes, cookies, pastries, candies, and frozen confections for retail and wholesale distribution and consumption on or off the premises. | 5,254,642<br><br>August 1, 2017 |

| | | |
|---|---|---|
| | IC 035. US 100,101,102. G & S On-line retail store services featuring bakery and confectionary products; Retail bakery shops. | |
|  | IC 030. US 046. G & S: Bakery goods and dessert items, namely, cakes, cookies, pastries, candies, and frozen confections for retail and wholesale distribution and consumption on or off the premises.<br><br>IC 035. US 100, 101, 102. G & S: On-line retail store services featuring bakery and confectionary products; Retail bakery shops. | 5,161,223<br><br>March 14, 2017 |
|  | IC 030. US 046. G & S: Bakery goods; Bakery goods and dessert items, namely cakes, cookies, pastries, candies, and frozen confections for retail and wholesale distribution and consumption on or off the premises; Bakery goods, namely, cakes.<br><br>IC 035. US 00 101 102. G & S: Online retail bakery shops; Retail bakery shops. | 5,072,673<br><br>Nov. 1, 2016 |

Copies of the registration certificates for each of these marks are included in Ex. F.

27.     Today, MomoMilk has 17 stores nationwide, including stores in New York, Boston, Washington, D.C., Los Angeles and Las Vegas. As recently reported in *The New York Times,* Ms. Tosi is considering expansion into other cities where MILK BAR has a fan base, including Miami and Chicago. Ex. G.

28.     Already this year, MILK BAR has been featured or mentioned in over 50 independent media outlets including the *Chicago Tribune, Eater Chicago, USA Today, The New York Times, Food & Wine* and *Buzzfeed.* In 2018, it was featured or discussed nearly 500 times in press outlets, not including social media and other non-traditional outlets.

29.     Put another way, the MILK BAR brand had over 3 *billion* media impressions in 2018 alone.

30.    A "media impression" is a metric which calculates the average number of interactions consumers have with a given piece of content, either directly or indirectly.

**C.    MILK BAR already has a fan base in Chicago.**

31.    Even though MILK BAR does not have a brick and mortar presence in Chicago, it has acquired name recognition in the Chicago market.

32.    Based on the Cision metrics measurement tool, the MILK BAR brand made over 62 million media impressions from Chicago media outlets in 2018 alone.

33.    The Cision metrics measurement tool employs a variety of algorithms to analyze media mentions in various areas including prominence and impact.

34.    In addition, the MILK BAR brand has over 643,508 social media followers, including Facebook, Twitter and Instagram.  According to Instagram reports, four percent of MILK BAR's Instagram followers are found in Chicago.

35.    MILK BAR has sold hundreds of thousands of dollars of its products to customers in Chicago through its website.  That does not include purchases made by Chicago-area residents directly from MILK BAR store locations throughout the country.

36.    The overwhelming popularity and recognition of the MILK BAR brand makes its activities newsworthy in Chicago.  When the *New York Times* mentioned that Ms. Tosi was considering opening a MILK BAR in Chicago (Ex. G), the announcement was met with so much interest that *The Chicago Tribune  Time Out* and *Eater Chicago* featured articles repeating this possibility.  See Ex. H and https://www.eater.com/2019/2/12/18221735/milk-bar-expansion-christina-tosi-investment.

37.    Indeed, the possibility of a MILK BAR store opening in Chicago was greeted with eager anticipation by a *Chicago Tribune* reporter:

> Milk Bar could be coming for Chicago.  No, we are not speaking of Jojo's Milk Bar….which is coming soon to River North. We mean *the* Milk Bar, the one run by Christina Tosi.  You know, the one with multiple cookbooks and fawning celebrity endorsements, which also proudly labels itself a "dessert empire and lifestyle brand."

Ex. H.  (Emphasis in original)

**D.     Jojo's tries to trade on MILK BAR's success.**

38.     In October 2018, MomoMilk first learned that Jojo's was seeking to trade on its name and goodwill when it received an email from a Chicago MILK BAR fan, Myra Isabelle Rubin, who expressed her excitement that a MILK BAR bakery might open in Chicago:

> Hi!!! Totally random, have been googling etc.  While walking back home today, I came across a public notice from Dept of Business Affairs for a license and name of applicant is Milk Bar…Are you opening in Chicago?!?!?! I sure hope so! Would literally be my neighbor.  Thank you.

See email, attached as Ex.I.

39.     The public notice Ms. Rubin saw is attached as Ex.J.  It referenced "Milk Bar, LLC" as the owner and resulted in her confusion as to the source of the new establishment.

40.     A MomoMilk representative responded that the company did not have current plans for a Chicago opening.  After further investigation, Ms. Rubin had learned that MILK BAR was not opening in Chicago, but rather what she termed was " . . .  sadly a blatant rip off of Milk Bar."

41.     And, indeed, the materials she found underscored Jojo's attempt to "rip off" MomoMilk's MILK BAR.

42.     JoJo's marketing materials started off referring to "Chicago's first Milk Bar…" repeatedly capitalizing the first letters in "milk" and "bar" as if they are proper nouns or brand names, even though MILK BAR is a federally registered trademark of MomoMilk.

43. The remaining portion of JoJo's marketing materials contained multiple buzz words which could confuse consumers into inferring a connection between Jojo's Milk Bar and MomoMilk's MILK BAR:

> The **Milk Bar** concept is built around an amazing new food trend. over (sic) the top **Milk Shakes**. In a time where Instagram rules the food industry, people of all ages are demanding picturesque dining experiences to show off their food adventures. One trend that has taken off overseas and is just making it's (sic) way to the US is the **Milk Bar. New York City** has proved this **Milk Shake** trend to be the real thing and it's time Chicago takes it to a whole new level. Rather than stop with shakes, Jojo's will be an all encompassing **Milk Bar** capturing the **"Cereal Bar"** trend that is gaining traction in the UK and the **flavored milk** and **Cookie** trend that is already growing around the world.

See Ex. K (emphasis added).

44. Notably, almost from its inception, MomoMilk's MILK BAR has featured "Cereal Milk® Soft Serve" ice cream and other "cereal-based" products, including a fruity cereal shake and crunchy cereal shake among the many milk shakes it currently serves.

45. Despite Jojo's claim that it would capture the cereal bar, flavored milk and cookie trend, its current menu does not appear to offer significant cereal-related items.

46. On information and belief, Jojo's made claims about its menu to further imply a relationship with New York-based MomoMilk's MILK BAR.

47. In choosing the store name "'jojo's *milkBAR*," Jojo's made use of a repetitive monosyllabic portion of the "momo" in Momofuku from MILK BAR's days as "Momofuku MILK BAR." This aural choice only heightens the conscious similarity between the junior mark Jojo's adopted and Momomilk's senior and well-known mark.

48. Shortly after MomoMilk heard from Ms. Rubin, an *Eater Chicago* article appeared online announcing that Jojo's would open a Milk Bar in the River North area of

Chicago. Its opening led yet another restaurant reporter to distinguish Jojo's from Milk Bar, "The similarity in names may bring comparisons to Milk Bar, the highly acclaimed bakery chain founded by pastry chef extraordinaire Christina Tosi in 2008 in New York." Ex. L.

49.     MomoMilk tried to address the obvious confusion issues in a private, low-key manner. Accordingly, on November 8, 2018, to privately resolve this matter, MomoMilk sent a letter to two addresses: Jojo's business address and the residence of Robert Schloss, JoJo's principal. The letter identified the infringing nature of JoJo's prospective use of "Milk Bar," MomoMilk's prior rights, including its federally-registered trademark, and spoke of the confusion that already had resulted. Momomilk requested that JoJo's "…immediately discontinue any use of the MILK BAR® trademark in connection with your business…". A copy of the letter is attached as Ex. M. As shown by the Federal Express slips, at least one of which was signed by Mr. Schloss, both messages were received. Ex. N.

50.     Jojo's response? Silence.

**E.      Jojo's proceeds, undeterred.**

51.     Despite MomoMilk's letter specifically identifying the similarities in the marks and actual confusion, Jojo's proceeded with its plan to open under the confusingly similar marks.

52.     Days after receiving MomoMilk's letter, with full knowledge of MomoMilk's registered MILK BAR mark, Jojo's, though the Castle Hospitality Group LLC, filed an application to use "JOJO'S MILK BAR" with the United States Patent and Trademark Office. A copy of the application is attached as Ex. O.

53.     In its application, Jojo's disclaimed the words "MILK BAR."

54.     Jojo's infringing acts went even further than MomoMilk was aware in November 2018. In practice, Jojo's gets even closer to MomoMilk's federally registered MILK BAR mark.

55.     Despite the disclaimer in its Jojo's trademark application for the words "milk" and "bar,", in actual use, the word "Jojo's" is deemphasized so that it represents only a fraction of the total mark, and often is so overshadowed that it is not noticeable at all.  As the Jojo's publicity photograph below reflects, "Jojo's" is almost completely obscured, focusing the consumer's attention on the word's "MILK BAR."



56.     Likewise, on Jojo's own website at https://www.jojosmilkbar.com/about-us , its picture of its storefront actually cuts off the word "Jojo's" from the store's name:



57. Jojo's not only makes "milk" and "bar" the predominant features of its mark, it renders the word "milk" in a script that is substantially similar to MomoMilk IP's *milk* marks.

58. The federally registered *milk* trademarks owned by MomoMilk IP and set out in paragraph 26 above, all cover frozen confections, the precise use made of this mark by Jojo's as shown in the photo in paragraph 55 above.

59. To further heighten the confusing similarities, it should be noted that MomoMilk uses its *milk* marks on the side of its soft serve container, in exactly the same spot that Jojo's uses its rendition of the *milk* mark on its glassware:



60. MomoMilk's soft serve confections have acquired such notoriety that the design of these confections is a federally registered trademark (see paragraph 26). While others are free to sell frozen confectionary products in any shape, using other MomoMilk trademarks on the containers for such products heightens the likelihood of confusion in the minds of the purchasing public.

61. Because consumers do not encounter the MILK BAR or *milk* marks and ^jojo's

*milkBAR* mark next to one another, the incredible similarity of Jojo's mark to both of the

MomoMilk marks can easily call to mind MomoMilk's trademarks and products, thereby heightening the likelihood of consumer confusion.

62.     Other choices made by Jojo's show a conscious evocation of the MILK BAR store and product lines.  In fact, throughout its website, Jojo's repeatedly de-emphasizes the word "Jojo's" and not only emphasizes the words "*milk*" and "BAR," but also repeatedly focuses on the baked goods it offers, even though it purports to have a full meal menu.

63.     For example, on Jojo's "about us" page, Jojo's emblazons the words "Milk Bar 2.0" over a series of cookies backed by milk bottles.  Right below that same picture are pictures of three milk shakes featuring the Jojo's logo where only the words "milk" and "bar" are perceptible:



64.     The net result is that MomoMilk's registered mark "MILK BAR" is repeatedly emphasized with virtually no reference to "Jojo's."

65.     The accompanying text does nothing to add prominence to the word "Jojo's" but rather emphasizes the baked goods offerings, stating in part:

> WHO ARE WE? WE'RE THE NEXT GENERATION **MILK BAR** WITH OVER THE TOP MILK SHAKES AND **PASTRIES INCLUDING JUMBO COOKIE FLIGHTS** INFUSED MILKS, **DESIGNER POP TARTS** ANND FROZEN MILK BARS….

Ex. P (emphasis added)

66.     Elsewhere in its restaurant, Jojo's also continues to trade off MILK BAR's *milk*

mark.  In a bowling game obviously customized for Jojo's, Jojo's actually uses the confusing

similar solo script word "*milk*" on the bowling pins:



67.     On top of that, Ms. Tosi's frequent television appearances and ubiquitous oral

references to "MILK BAR" draws the consumers' attention on the words "MILK BAR" as the

product and services associated with Ms. Tosi and has created numerous aural encounters

between the MomoMilk mark and consumers in locations, like Chicago, that do not have a

MomoMilk brick and mortar store.

68.     Jojo's employs many triggers designed to cause consumer confusion with

MomoMilk and its creative voice, Ms. Tosi, such as Jojo's reduction of its mark to just the words

"*milk*BAR" (identical not only to MomoMilk's registered MILK BAR mark but also to its

registered *milk* marks) undistinguished by the often-imperceptible presentation of the word

"Jojo's."  Collectively, these not coincidental similarities evince an intent to confuse consumers.

69.     Jojo's intention to minimize the only non-disclaimed portion of its mark "Jojo's"

while emphasizing and trading off the MILK BAR trademark's substantial recognition and good will was laid bare in a promotional piece on a local Fox News program created in connection with Jojo's opening which can be found at https://www.fox32chicago.com/mornings/392192482-video.

70.     In the Fox News piece, apparently shot in the Fox News studio, Jojo's chef and partner, Christine McCabe promotes Jojo's products, including cookies and other baked goods.

71.     The voice over introduces the piece referring to "*Milk Bar* in River North…." (emphasis added).  Throughout the interview, the reporter calls the establishment "Milk Bar" without correction by Ms. McCabe.

72.     Although the on-camera display includes copies of menus and glassware bearing Jojo's logo, the clear and most prominent words used in the display are the words "MILK BAR." To the extent any portion of Jojo's logo is perceptible on the few materials provided by Jojo's for this shoot, the words "MILK BAR" are the only ones that visually readable.

73.     A screen shot from the Fox News piece emphasizing the words MILK BAR is set forth below:



74.     On information and belief, the focus on the words "MILK BAR" and the de-emphasis of the word "Jojo's" was intentional and reflects Jojo's plan to trade off the recognition and fame of MomoMilk's MILK BAR mark.

75.     In fact, other portions of the Fox News promotional piece underscore the confusion caused by Jojo's attempts to trade off MomoMilk's MILK BAR good will.

76.     The opening frames of the Fox News segment feature a number of pictures of Jojo's milk shakes (all in Jojo's glassware where only the words "milk bar" are perceptible).

77.     Amongst the pictures of Jojo's offerings, however, is an unmistakable image of a MomoMilk MILK BAR product, the longstanding and enormously popular multi-color birthday cake. (See reference in paragraph 10 above.)  A screen shot is set forth below:



78.     In other words, the Fox News segment prominently features Plaintiff's MILK BAR birthday cake and passes it off as a Jojo's product.

79.     This birthday cake has, in one journalist's words from an article posted on People

magazine's website, become "iconic" because it is so closely associated with MomoMilk and its offerings.  Ex. P.

80.     Further, the design of this cake has become so representative of MomoMilk as its source that it is a federally registered trademark.  See paragraph 26 above.

81.     Either Jojo's provided Plaintiff's MILK BAR birthday cake image along with other images of its products in an effort to confuse consumers viewing the segment into believing there was a connection between MomoMilk's popular and distinctive MILK BAR bakeries and products and Jojo's fledging establishment or, alternatively, a Fox News producer preparing for the Jojo's segment was confused, mistakenly located an image of MILK BAR's birthday cake and included it the montage of what he or she believed to be the products associated with Jojo's.

82.     In either case, the Fox News coverage shows the inherent confusion (either by Jojo's design or resulting from a guileless potential consumer) between Jojo's use of any mark containing MILK BAR and Plaintiff's products.

83.     According to the Fox News video, it was posted on February 28, 2019, the day Jojo's opened.

84.     Even so, weeks after the deceptive and confusing image suggesting Jojo's is offering a popular MILK BAR product is still posted on the Fox News website, continuing to confuse consumers viewing this promotional piece into believing MILK BAR is somehow related to Jojo's.

85.     On information and belief, Jojo's is and was fully aware of the presence of the confusing image and misuse of the name MILK BAR.

86.     On information and belief, Jojo's has done nothing to correct the confusing Fox News image or trademark usage.

**F.      Jojo's is confusing consumers.**

87.      As noted in the attached article, one "foodie" who came across Jojo's website immediately mis-associated Jojo's with MomoMilk's MILK BAR stating: "It [Jojo's] is a spinoff of The Milk Bar Bakery in New York…".  Ex. Q.  Contrary to the assertion copied directly from the Jojo's webpage by this same writer, Jojo's is not "the next-generation Milk Bar."  The two are completely unrelated.

88.      As the attached Yelp reviews reflect, Jojo's emphasizes its milkshakes and other confectionary products, offerings that consumers have come to associate with the MILK BAR brand.  Ex. R. (Collective group of social media posts).  The confusingly similar name on such products generates actual confusion.

89.      Another Yelp reviewer stated, "So my bad, I got overly excited because I mistakenly thought this was a **Chicago outpost of the original Milk Bar.**" Ex. R. (emphasis added)

90.      One Instagram user wrote, "…[T]he same milk bar you have in Vegas just a different name!!" Ex. S.  Another wrote, "omg this is more intense than the one Chad and I got in Vegas" Ex. T.

91.      MomoMilk has a MILK BAR bakery in Las Vegas; Jojo's does not.

92.      Still another Instagram user posted, " Do u guys have crack pie" Ex. U. Crack Pie, of course, was the former name for this popular dish at MomoMilk's Milk Bar.  (See paragraph 10 above.)

**G.  The use of the mark Jojo's Milk Bar alone creates confusion.**

93.      Not only have consumers repeatedly shown their confusion, but even more sophisticated members of the restaurant press have repeatedly have gone to great lengths to

distinguish between Plaintiff's famed MILK BAR bakery and Jojo's because they recognize that the use of Jojo's mark alone in their articles will conjure up associations with MomoMilk's offerings.

94.     The fact that various members of the press have gone to such efforts to advise the public that their story on "jojo's *milkBAR*" has nothing to do with MomoMilk's MILK BAR not only reflects the public recognition and distinctive character of MomoMilk's MILK BAR mark, but also the recognition that Jojo's virtually identical mark is very likely to cause confusion.

95.     For example, in a February 19, 2019 article, *Eater Chicago* again pointed out, "[The] bar has nothing to do with Christina Tosi's Milk Bar…". See Ex. V.

96.     Similarly, Phil Vettel, the *Chicago Tribune* restaurant critic, apparently felt compelled to alert readers to the differences between the restaurants:

> Tuesday, we reported that Christina Tosi was eyeing Chicago as a likely destination for **her acclaimed Milk Bar in New York**. Another group plans to beat Tosi to the punch. Or milkshake, as the case may be.

See Ex. W.

97.     On information and belief, Jojo's choice of the mark name, its use of script font, its website's emphasis on baked goods, use of the jojo's *milkBAR* mark on frozen confectionary containers, its creation of its logo deemphasizing the word "Jojo's" and much of its promotion all were done with the specific intention of trading off MomoMilk's longstanding goodwill associated with its MILK BAR and *milk* products and services to the detriment of MomoMilk.

## COUNT I
## FEDERAL TRADEMARK INFRINGEMENT

98.     Jojo's use of a confusingly similar imitation of MomoMilk's federally-registered

marks is likely to cause confusion, deception and mistake by creating the false and misleading impression that Jojo's goods and services are offered by MomoMilk or are associated or connected with MomoMilk or have the sponsorship, endorsement, or approval of MomoMilk.

99.    Jojo's mark is confusingly similar to MomoMilk's registered marks in violation of 15 U.S.C. § 1114.  Jojo's activities are causing and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of the members of the trade and public, and, additionally, injury to MomoMilk's goodwill and reputation, for which MomoMilk has no adequate remedy at law.

100.    Jojo's actions demonstrate an intentional, willful and malicious intent to trade on the good will associated with MomoMilk's registered marks.

101.    Jojo's has caused and is likely to continue causing substantial injury to the public and to MomoMilk, and MomoMilk is entitled to injunctive relief and to recover Jojo's profits, actual damages, enhanced profits and damages, costs and reasonable attorneys' fees under 15 U.S.C.  §§ 1114, 1116 and 1117.

WHEREFORE, MomoMilk requests that this Court:

1.    Grant a permanent and preliminary injunction, enjoining Jojo's and all of its agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through or under authority from Jojo's, or in concert or participation with Jojo from:

      a.    advertising, marketing, promoting, offering for sale, distributing, or selling any products or services under the MILK BAR or *milk* marks;

      b.    using "MILK BAR" or "*milk*" in connection with any of Jojo's goods or services;

      c.    using any trademark, name, logo, design, or source designation of any kind on or

in connection with Jojo's goods or services that is a copy, reproduction, colorable imitation, or simulation of, or confusingly similar to any of MomoMilk's trademarks, trade dresses, names, or logos;

d. using any trademark, name, logo, design, or source designation of any kind on or in connection with JoJo's goods and services that is likely to cause confusion, mistake, deception, or public misunderstanding that such goods or services are produced or provided by MomoMilk, or are sponsored or authorized by MomoMilk, or are in any way connected or related to MomoMilk;

e. using any trademark, name, logo, design, or source designation of any kind on or in connection with Jojo's goods and services that dilutes or is likely to dilute the distinctiveness of MomoMilk's trademarks, trade dresses, names, or logos;

f. passing off, palming off, or assisting in passing off or palming off Jojo's goods and services as those of MomoMilk; and

g. passing off, palming off, or assisting in passing off or palming off MomoMilk's goods or services as those of Jojo's.

2. Order Jojo's to deliver up for impoundment and for destruction all products, glassware, dishware material, bags, boxes, labels, tags, signs packages, receptacles, advertising, sample books, promotional materials, stationery, or other materials in the possession, custody or under the control of Jojo's that are found to adopt, infringe, or dilute any of MomoMilk's trademarks or that otherwise unfairly compete with MomoMilk and its products;

3. Order that Jojo's be compelled to account to MomoMilk for any and all profits derived by Jojo's for the sale of any products or services under the MILK BAR or *milk* marks;

4. Award MomoMilk all damages caused by the acts forming the basis of this

Complaint;

5.      Based on Jojo's knowing and intentional use of a confusingly similar imitation of

MomoMilk's MILK BAR and *milk* marks, enhance the damages awarded and the award of

Jojo'sprofits as provided for by 15 U.S.C. § 1117(a);

6.      Require Jojo's pay to MomoMilk the costs and reasonable attorneys' fees incurred

by MomoMilk in this action pursuant to 15 U.S.C. § 1117(a)

7.      Award MomoMilk prejudgment and post-judgment interest on all monetary

awards; and

8.      Grant MomoMilk such other and further relief as the Court may deem just.

## COUNT II
## UNFAIR COMPETITION UNDER SECTION 43(a)
## OF THE LANHAM ACT

102.    MomoMilk restates and realleges each allegation in paragraph 1 through 97.

103.    Jojo's use of "jojo's *milkBAR*" mark is confusingly similar to the MILK BAR and

*milk* marks and, as described above, has caused and is likely to cause confusion or mistake and/or

deceive in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

104.    Jojo's activities constitute unfair competition, false designation of origin, trade

mark infringement and false description and representation all in violation of Section 43(a) of the

Lanham Act.

105.     Jojo's has committed these acts deliberately, willfully and with full knowledge of

MomoMilk's prior use of, and rights in its trademarks and other property.

106.    As a result of Jojo's acts of unfair competition, MomoMilk has suffered and will

continue to suffer serious and irreparable harm for which there is no adequate remedy at law.

WHEREFORE, MomoMilk requests that this Court:

1.      Grant a permanent and preliminary injunction, enjoining Jojo's and all of its agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through or under authority from Jojo's, or in concert or participation with Jojo from:

   a.   advertising, marketing, promoting, offering for sale, distributing, or selling any products or services under the MILK BAR or *milk* marks;

   b.   using "MILK BAR" or "*milk*" in connection with any of Jojo's goods or services;

   c.   using any trademark, name, logo, design, or source designation of any kind on or in connection with Jojo's goods or services that is a copy, reproduction, colorable imitation, or simulation of, or confusingly similar to any of MomoMilk's trademarks, trade dresses, names, or logos;

   d.   using any trademark, name, logo, design, or source designation of any kind on or in connection with JoJo's goods and services that is likely to cause confusion, mistake, deception, or public misunderstanding that such goods or services are produced or provided by MomoMilk, or are sponsored or authorized by MomoMilk, or are in any way connected or related to MomoMilk;

   e.   using any trademark, name, logo, design, or source designation of any kind on or in connection with Jojo's goods and services that dilutes or is likely to dilute the distinctiveness of MomoMilk's trademarks, trade dresses, names, or logos;

   f.   passing off, palming off, or assisting in passing off or palming off Jojo's goods and services as those of MomoMilk; and

   g.   passing off, palming off, or assisting in passing off or palming off MomoMilk's

goods or services as those of Jojo's.

2.    Order Jojo's to deliver up for impoundment and for destruction all products, glassware, dishware material, bags, boxes, labels, tags, signs packages, receptacles, advertising, sample books, promotional materials, stationery, or other materials in the possession, custody or under the control of Jojo's that are found to adopt, infringe, or dilute any of MomoMilk's trademarks or that otherwise unfairly compete with MomoMilk and its products;

3.    Order that Jojo's be compelled to account to MomoMilk for any and all profits derived by Jojo's for the sale of any products or services under the MILK BAR or *milk* marks;

4.    Award MomoMilk all damages caused by the acts forming the basis of this Complaint;

5.    Based on Jojo's knowing and intentional use of a confusingly similar imitation of MomoMilk's MILK BAS and *milk* marks, enhance the damages and the award of Jojo's profits as provided for by 15 U.S.C. § 1117(a);

6.    Require Jojo's pay to MomoMilk the costs and reasonable attorneys' fees incurred by MomoMilk in this action pursuant to 15 U.S.C. § 1117(a);

7.    Award MomoMilk prejudgment and post-judgment interest on all monetary awards; and

8.    Grant MomoMilk such other and further relief as the Court may deem just.

## COUNT III
## COMMMONLAW TRADEMARK INFRINGEMENT

107.    MomoMilk repeats and realleges each allegation contained in paragraphs 1 through 97.

108.    Jojo's acts set forth above constitute infringement of MomoMilk's commonlaw

trademark rights.

109.     MomoMilk owns all rights, title, and interest in the mark MILK BAR and *milk* marks, including all common law rights.

110.     Jojo's acts constitute infringement of MomoMilk's rights in MILK BAR and *milk* marks and falsely describe or represent that Jojo's services and food products are provided by, or sponsored by, or approved by, or licensed by, or affiliated with or in some other way legitimately connected to MomoMilk and are of the same character, nature and quality as the services and food products provided by MomoMilk, thereby damaging MomoMilk's reputation.

111.     Jojo's consumer-oriented conduct was directed at the public, materially misleading to the public, has affected the public interest of Illinois and has resulted in injury to consumers in Illinois.

112.     Jojo's complained of acts constitute trademark infringement and unfair competition against MomoMilk under the common law of the State of Illinois, which acts have been committed knowingly and willfully and have injured MomoMilk in its trade and business.

113.     By reason of the acts, Jojo's has caused damage to MomoMilk and to the goodwill associated with MomoMilk and its trademarks as well as injury to the public.

114.     Unless enjoined by this Court, Jojo's wrongful acts will continue and MomoMilk will continue to suffer irreparable harm for which it has no adequate remedy at law.

WHEREFORE, MomoMilk requests that this Court:

1.     Grant a permanent and preliminary injunction, enjoining Jojo's and all of its agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through or under authority from Jojo's, or in concert or participation with Jojo from:

a. advertising, marketing, promoting, offering for sale, distributing, or selling any products or services under the MILK BAR or *milk* marks;

b. using "MILK BAR" or "*milk*" in connection with any of Jojo's goods or services;

c. using any trademark, name, logo, design, or source designation of any kind on or in connection with Jojo's goods or services that is a copy, reproduction, colorable imitation, or simulation of, or confusingly similar to any of MomoMilk's trademarks, trade dresses, names, or logos;

d. using any trademark, name, logo, design, or source designation of any kind on or in connection with JoJo's goods and services that is likely to cause confusion, mistake, deception, or public misunderstanding that such goods or services are produced or provided by MomoMilk, or are sponsored or authorized by MomoMilk, or are in any way connected or related to MomoMilk;

e. using any trademark, name, logo, design, or source designation of any kind on or in connection with Jojo's goods and services that dilutes or is likely to dilute the distinctiveness of MomoMilk's trademarks, trade dresses, names, or logos;

f. passing off, palming off, or assisting in passing off or palming off Jojo's goods and services as those of MomoMilk; and

g. passing off, palming off, or assisting in passing off or palming off MomoMilk's goods or services as those of Jojo's.

2. Order Jojo's to deliver up for impoundment and for destruction all products, glassware, dishware material, bags, boxes, labels, tags, signs packages, receptacles, advertising, sample books, promotional materials, stationery, or other materials in the possession, custody or under the control of Jojo's that are found to adopt, infringe, or dilute any of MomoMilk's

trademarks or that otherwise unfairly compete with MomoMilk and its products;

3.  Order that Jojo's be compelled to account to MomoMilk for any and all profits derived Jojo's for the sale of any and products or services under the MILK BAR or *milk* marks;

4.  Award MomoMilk all damages caused by the acts forming the basis of this Complaint;

5.  Award MomoMilk prejudgment and post-judgment interest on all monetary awards; and

6.  Grant MomoMilk such other and further relief as the Court may deem just.

### COUNT IV
### DECEPTIVE TRADE PRACTICE UNDER ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT 815 ILCS §§ 510/1, ET SEQ. AND ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT, 815 ILCS §§ 505/1, ET SEQ.

115.  MomoMilk repeats and realleges each and every allegation contained in the paragraphs 1 through 97 as if fully set forth.

116.  MomoMilk is the exclusive owner of the rights in and the trademarks MILK BAR and *milk*.

117.  Jojo's has knowingly and willfully engaged in deceptive trade practices within the meaning of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS §§ 510/1 et seq. and Illinois Consumer Fraud and Deceptive Business Practices Act 815 ILCS §§ 505/1 et seq.

118.  Jojo's unfair methods of competition and unfair and deceptive trade and business practices impact upon and have damaged the public by causing the public to be confused or misunderstand the source, origin, or sponsorship of the Jojo's goods and services. Jojo's has committed these acts willfully, with intent to cause confusion, mistake, and deception of the

consuming public.

119.    Jojo's is misleading the public into believing that a connection exists between the Jojo's and MomoMilk's products and services by assuming, adopting and using the MILK BAR and *milk* marks with intent to deceive or mislead the public.

120.    Due to Jojo's unfair competition and unfair and deceptive trade and business practices, MomoMilk has suffered, and will continue to suffer substantial damages, in an amount to be proved at trial.

121.    MomoMilk is entitled to injunctive relief and to an award of its costs and attorney's fees under 815 ILCS § 510/3.

122.    Unless enjoined by this Court, Jojos' wrongful acts will continue and MomoMilk will continue to suffer irreparable harm for which it has no adequate remedy at law.

WHEREFORE, MomoMilk requests that this Court:

1.    Grant a permanent and preliminary injunction, enjoining Jojo's and all of its agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through or under authority from Jojo's, or in concert or participation with Jojo from:

> a.    advertising, marketing, promoting, offering for sale, distributing, or selling any products or services under the MILK BAR or *milk* marks;
>
> b.    using "MILK BAR" or "*milk*" in connection with any of Jojo's goods or services;
>
> c.    using any trademark, name, logo, design, or source designation of any kind on or in connection with Jojo's goods or services that is a copy, reproduction, colorable imitation, or simulation of, or confusingly similar to any of MomoMilk's

trademarks, trade dresses, names, or logos;

d. using any trademark, name, logo, design, or source designation of any kind on or in connection with JoJo's goods and services that is likely to cause confusion, mistake, deception, or public misunderstanding that such goods or services are produced or provided by MomoMilk, or are sponsored or authorized by MomoMilk, or are in any way connected or related to MomoMilk;

e. using any trademark, name, logo, design, or source designation of any kind on or in connection with Jojo's goods and services that dilutes or is likely to dilute the distinctiveness of MomoMilk's trademarks, trade dresses, names, or logos;

f. passing off, palming off, or assisting in passing off or palming off Jojo's goods and services as those of MomoMilk; and

g. passing off, palming off, or assisting in passing off or palming off MomoMilk's goods or services as those of Jojo's.

2. Order Jojo's to deliver up for impoundment and for destruction all products, glassware, dishware material, bags, boxes, labels, tags, signs packages, receptacles, advertising, sample books, promotional materials, stationery, or other materials in the possession, custody or under the control of Jojo's that are found to adopt, infringe, or dilute any of MomoMilk's trademarks or that otherwise unfairly compete with MomoMilk and its products;

3. Order that Jojo's be compelled to account to MomoMilk for any and all profits derived Jojo's for the sale of any and products or services under the MILK BAR and "*milk*" marks;

4. Award MomoMilk all damages caused by the acts forming the basis of this Complaint;

5.     Based on Jojo's knowing and intentional use of a confusingly similar imitation of MomoMilk's MILK BAR or "*milk*" marks award punitive damages;

6.     Require Jojo's pay to MomoMilk the costs and reasonable attorneys' fees incurred by MomoMilk in this action;

7.     Award MomoMilk prejudgment and post-judgment interest on all monetary awards; and

8.     Grant MomoMilk such other and further relief as the Court may deem just.

Respectfully submitted,

**MOMOMILK, LLC**, and **MOMOMILK IP, LLC**

By:  /s/  Kevin Tottis _____
        One of its Attorneys

Kevin Tottis (ARDC No. 6193853)
ktottis@tottislaw.com
Monica L. Thompson (ARDC No. 6181455)
mthompson@tottislaw.com
TottisLaw
One East Wacker Drive
Suite 1205
Chicago, IL 60601
Tel: (312) 527-1400
Fax: (312) 589-7192

## VERIFICATION

Christina Tosi, states and declares as follows:

I am one of the owners of MomoMilk LLC.

I have read the Verified Complaint and it is true to the best of my personal knowledge and review of documents, except in those instances where matters are alleged upon information and belief, in which case I believe them to be true.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 22, 2019                    By: _____

                                             Christina Tosi